# UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANKLIN LEONIDAS ONCE CHILLOGALLO,<br><br>*Petitioner*,<br><br>v.<br><br>J.L JAMISON, Warden of Federal Detention Center, Philadelphia; MICHAEL T. ROSE, Acting Philadelphia Field Office Director, United States Immigration and Customs Enforcement; TODD M. LYONS, Acting Director of Immigration & Customs Enforcement; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; and PAMELA BONDI, Attorney General, U.S. Department of Justice,<br><br>*Respondents*. | CIVIL ACTION<br><br>No. 2:26-cv-00313 |

## RESPONDENTS' OPPOSITION TO
## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner has filed a petition for writ of habeas corpus, challenging the authority of the U.S. Secretary of the Department of Homeland Security ("DHS") to detain him under 8 U.S.C. § 1225(b)(2), rather than 8 U.S.C. § 1226(a).

The petition concerns whether an alien who is present in the United States without admission is properly subject to mandatory detention (*i.e.*, detention without the prospect of release on bond) during the pendency of his administrative removal proceedings pursuant to 8 U.S.C. § 1225(b)(2), and the Court's jurisdiction to consider a petition for release.

This legal question has been considered by numerous courts in the wake of the Board of Immigration Appeals' ("BIA") decision in *Matter of Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025). The vast majority—including all decisions in this district (more than 90 to date)—have rejected the government's position.[1] The Third Circuit Court of Appeals has not addressed this question.[2] Federal Respondents respectfully remain of the view that their position is correct and therefore present

---

[1] *See, e.g., Patel v. McShane*, No. 25-cv-5975 (E.D. Pa. Nov. 20, 2025) (Brody, J.); *Ndiaye v. Jamison*, No. 25-cv-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025) (Sánchez, J.); *Demirel v. Fed. Det. Ctr. Philadelphia*, No. 25-cv-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) (Diamond, J.); *Kashranov v. Jamison*, No. 25-cv-5555, 2025 WL 3188399, at *4-7 (E.D. Pa. Nov. 14, 2025) (Wolson, J.); *Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *1-2 (E.D. Pa. Nov. 13, 2025) (Kenney, J.); *Centeno Ibarra v. Warden of the Federal Detention Center*, No. 25-cv-6312 (E.D. Pa. Nov. 25, 2025) (Rufe, J.); *Buele Morocho v. Jamison*, No. 25-cv-5930 (E.D. Pa. Nov. 26, 2025) (Gallagher, J.); *Diallo v. O'Neill*, No 25-cv-6358 (E.D. Pa. Nov. 26, 2025) (Savage, J.); *Espinal Rosa v. O'Neill*, No. 25-cv-6376 (E.D. Pa. Nov. 25, 2025) (Weilheimer, J.);*Wu v. Jamison*, No. 25-cv-6469 (E.D. Pa. Dec. 1, 2025) (Gallagher, J.); *Flores Obando v. Bondi*, No. 25-cv-6474 (E.D. Pa. Dec. 1, 2025) (Brody, J.); *Valdivia Martinez v. FDC*, No. 25-cv-6568 (E.D. Pa. Dec. 1, 2025) (Savage, J.); *Soumare v. Jamison*, No. 25-cv-6490 (E.D. Pa. Dec. 2, 2025) (Henry, J.); *Yilmaz v. Warden, FDC*, No. 25-cv-6572 (E.D. Pa. Dec. 2, 2025) (Rufe, J.); *Nogueira-Mendes v. McShane*, No. 25-cv-5810 (E.D. Pa. Dec. 3, 2025) (Slomsky, J.); *Juarez Velazquez v. O'Neill*, No. 25-cv-6191 (E.D. Pa. Dec. 3, 2025) (Henry, J.); *Perez-Suspes v. Rose*, No. 25-cv-6608 (E.D. Pa. Dec. 5, 2025) (Brody, J.); *Delgado Villegas v. Bondi*, No. 25-cv-6143 (E.D. Pa. Dec. 4, 2025) (Diamond, J.); *Hidalgo v. O'Neill*, No. 25-cv-6775 (E.D. Pa. Dec. 5, 2025) Diamond, J.); *Conde v. Jamison*, No. 25-cv-6551 (E.D. Pa. Dec. 5, 2025) (Brody, J.); *Rodrigues Pereira v. O'Neill*, No. 25-cv-6543 (E.D. Pa. Dec. 8, 2025) (Marston, J.); *Bhatia v. O'Neill*, No. 25-cv-6809 (E.D. Pa. Dec. 8, 2025) (Rufe, J.); *Anirudh v. McShane*, No. 25-cv-6458 (E.D. Pa. Dec. 8, 2025) (Bartle, J.); *Acosta-Cibrian v. Rose*, No. 25-cv-6650 (E.D. Pa. Dec. 9, 2025) (Gallagher, J.); *Picon v. O'Neill*, No. 25-cv-6731 (E.D. Pa. Dec. 15, 2025) (Perez, J.). There have been many additional adverse decisions since December 15, 2025, and not including the already-decided petitions, there are approximately 25 pending habeas petitions confronting the same legal issue in this District.

[2] The Government is currently reviewing the Third Circuit's decision issued in *Khalil v. President, United States of America, et al.* (No. 25-2162) and its potential impact on Section 1225(b)(2) cases such as this one.

these arguments, despite the vast weight of contrary decisions in the district, to preserve them for appeal (if ultimately authorized by the Solicitor General).

For the reasons set forth below, the Court should dismiss the petition for lack of jurisdiction. In the alternative, should the Court reach the petition's merits, it should adopt the government's interpretation of the scope of § 1225(b)(2), consistent with the plain language of the statute.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a noncitizen of the United States and an applicant for admission into the United States. For the purposes of responding to this habeas petition only, the government does not dispute other facts or characterizations thereof stated in the petition (except if the petitioner claims he has been "admitted" to the United States). As the habeas petition acknowledges, ICE recently took Petitioner into custody under 8 U.S.C. § 1225(b) and did not set a bond. Petitioner is therefore unable to obtain review of his custody by an immigration judge pursuant to the BIA's decision in *Matter of Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025); *see also Matter of Q. Li*, 29 I. & N. Dec. 66, 70 (BIA 2025). Pursuant to the BIA *Hurtado* decision that is binding on all immigration judges, an immigration judge has no authority to consider a bond request for any person who entered the United States without admission. The BIA determined that such individuals are subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on

bond. *Id.*[3]

At the time of the filing of this petition, Petitioner was detained within the Eastern District of Pennsylvania.

## LEGAL STANDARD

A writ of habeas corpus is an "extraordinary remedy." *Shinn v. Ramirez*, 596 U.S. 366, 377 (2022). The petitioner bears the burden of showing his confinement is unlawful. *Hawk v. Olson*, 326 U.S. 271, 279 (1945); *accord Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (habeas petition "carries the burden of proof"); *see* 18 U.S.C. § 2241.

Judicial review of immigration matters, including of detention issues, is limited. *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999); *Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 489-92 (1999); *Miller v. Albright*, 523 U.S. 420, 434 n.11 (1998); *Fiallo v. Bell*, 430 U.S. 787, 792 (1977); *Reno v. Flores*, 507 U.S. 292, 305 (1993); *Hampton v. Mow Sun Wong*, 426 U.S. 88, 101 n.21 (1976) ("[T]he power over aliens is of a political character and therefore subject only to narrow judicial review."). The Supreme Court has "underscore[d] the limited scope

---

[3] On December 18, 2025, the district court judge in a Central District of California class action relating to § 1225 detainees issued a final judgment certifying the class. *See Maldonado Bautista v. Santacruz*, No. 25-cv-1873, ECF No. 94 (C.D. Cal. Dec. 18, 2025). DOJ has noticed an appeal in that case and believes (1) the district court lacked jurisdiction to issue injunctive relief outside the district, (2) it would be inappropriate to give preclusive effect to a declaratory judgment that is on appeal and (3) the circumstances here—including that this case arises in the habeas context—makes it a poor vehicle for invoking issue preclusion. To the extent Petitioner relies upon this class-action certification as a basis for relief, the Court need not address that issue as it can rule based on the parties' competing statutory arguments and avoid unnecessary confusion.

of inquiry into immigration legislation," and "has repeatedly emphasized that over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." *Fiallo*, 430 U.S. at 792 (internal quotation omitted); *Mathews v. Diaz*, 426 U.S. 67, 79-82 (1976); *Galvan v. Press*, 347 U.S. 522, 531 (1954).

The plenary power of Congress and the Executive Branch over immigration necessarily encompasses immigration detention, because the authority to detain is elemental to the authority to deport and because public safety is at stake. *See Shaughnessy v. United States*, 345 U.S. 206, 210 (1953) ("Courts have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."); *Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of this deportation procedure."); *Demore v. Kim*, 538 U.S. 510, 531 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."); *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018) ("Congress has authorized immigration officials to detain some classes of aliens during the course of certain immigration proceedings. Detention during those proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made.").

Petitioner must make a strong showing to demonstrate that his continued detention violates the Constitution or laws of the United States. *See United States*

*v. Five Gambling Devices*, 346 U.S. 441, 449 (1953) ("This Court does and should accord a strong presumption of constitutionality to Acts of Congress. This is not a mere polite gesture. It is a deference due to deliberate judgment by constitutional majorities of the two Houses of Congress that an Act is within their delegated power or is necessary and proper to execution of that power").

## ARGUMENT

The Court should deny the petition because: (1) this Court lacks jurisdiction to intervene in Petitioner's removal proceedings, (2) Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2), and (3) his detention does not violate Constitutional due process requirements.

## I.  The District Court lacks jurisdiction to intervene in removal proceedings.

Petitioner bears the burden of establishing that this Court has subject matter jurisdiction to address his claims. *See Erie Ins. Exch. v. Erie Indem. Co.*, 68 F.4th 815, 818 (3d Cir. 2023), *cert. denied*, 144 S. Ct. 1007 (2024); *Finley v. United States*, 490 U.S. 545, 547-48 (1989). He cannot meet this burden because his claims are jurisdictionally barred under 8 U.S.C. §§ 1252(g), 1252(b)(9), and 1252(a).

## A.  8 U.S.C. § 1252(g) bars Petitioner's claim because he challenges the government's action to commence removal proceedings.

Petitioner challenges the determination by the Secretary of Homeland Security to detain him pursuant to § 1225(b)(2), as opposed to § 1226(a). But Congress has provided that "no court shall have jurisdiction to hear any cause or claim" that arises from "the decision or action" to "commence" removal proceedings or "adjudicate [those] cases." 8 U.S.C. § 1252(g); *AADC*, 525 U.S. at 483; *Tazu v. AG*

*U.S.*, 975 F.3d 292, 296 (3d Cir. 2020). The Court lacks jurisdiction to adjudicate Petitioner's claims insofar as they arise "from the decision or action by the Attorney General [or Secretary of Homeland Security] to commence proceedings [and] adjudicate cases." § 1252(g); *Tazu*, 975 F.3d at 296; *Valencia-Mejia v. United States*, Civ. No. 08-cv-2943, 2008 WL 4286979, at *3 (C.D. Cal. Sept. 15, 2008).

The Secretary's decision to detain is a "specification of the decision to 'commence proceedings' which . . . § 1252 covers." *AADC*, 525 U.S. at 474, 485 n. 9; *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, [§ 1252(g)] bars us from questioning [the government's] discretionary decisions to commence removal" of a foreign national, including the "decision to take him into custody *and to detain him during his removal proceedings*" (emphasis added)); *Sissoko v. Rocha*, 509 F.3d 947, 949 (9th Cir. 2007); *S.Q.D.C. v. Bondi*, No. 25-cv-3348, 2025 WL 2617973, at *2 (D. Minn. Sept. 9, 2025); *see also Linarez v. Garland*, No. 24-cv-488, 2024 WL 4656265, at *4 (M.D. Pa. Sept. 24, 2024), *report and recommendation adopted sub nom. Cordón-Linarez v. Garland*, No. 24-cv-488, 2024 WL 4652824 (M.D. Pa. Nov. 1, 2024) ("[I]n our view, the Attorney General's discretionary decision to place Linarez in expedited removal proceedings is precisely the action this statute refers to."); *Saadulloev v. Garland*, No. 23-cv-106, 2024 WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024) (recognizing there is no judicial review of the threshold detention decision, which flows from the government's decision to "commence proceedings"); *Khorrami v. Rolince*, 493 F. Supp. 2d 1061, 1067-68 (N.D. Ill. 2007) (claim challenging arrest and detention during removal proceedings was barred

under § 1252(g)).

This Court lacks jurisdiction to adjudicate Petitioner's claim challenging the Secretary's decision to commence proceedings and hold him under § 1225(b)(2).

**B.     8 U.S.C. § 1252(b)(9) deprives this Court of jurisdiction because Petitioner challenges the government's interpretation of a statutory provision arising from actions taken to remove him from the United States.**

Even if this claim did not fall within the ambit of § 1252(g), the district court still lacks jurisdiction because Congress has chosen to channel review of immigration proceedings to the courts of appeal. "[N]o court shall have jurisdiction, by habeas corpus . . . or by any other provision of law," to review any questions of law or fact "arising from any action taken or proceeding brought to remove an alien from the United States"—including interpretation and application of constitutional and statutory provisions—except on a petition for review of a final order of removal to the Court of Appeals. 8 U.S.C. § 1252(b)(9); *see also id.* § 1252(a)(5) (applying the same jurisdictional bar to "judicial review of an order of removal").

Congress intended to insulate threshold detention decisions from district court review. The Supreme Court has made clear that § 1252(b)(9) is "the unmistakable 'zipper' clause," channeling "judicial review of all . . . decisions and actions leading up to or consequent upon final orders of deportation," including "non-final order[s]," into proceedings before a court of appeals. *AADC*, 525 U.S. at 483, 485; *see also J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (observing that § 1252(b)(9) is "breathtaking in its scope and vise-like in grip and therefore swallows up virtually all claims that are tied to removal proceedings").

While § 1225(b)(9) may not bar claims challenging the conditions or scope of detention of individuals in removal proceedings, it does bar claims "challenging the decision to detain them in the first place." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality opinion); *S.Q.D.C.*, 2025 WL 2617973, at *3. By making such a challenge, the habeas claim here requires a court to answer "legal questions" that arise from "an action taken to remove an alien." *Jennings*, 583 U.S. at 295 n. 3 (plurality opinion). Petitioner's claims "fall within the scope of § 1252(b)(9)." *Id*.

"Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the PFR [(petition for review)] process." *J.E.F.M.*, 837 F.3d at 1031. "[W]hile these sections limit *how* immigrants can challenge their removal proceedings, they are not jurisdiction-stripping statutes that, by their terms, foreclose *all* judicial review of agency actions. Instead, the provisions channel judicial review over final orders of removal to the courts of appeals." *Id*.; *see also id*. at 1035 ("§§ 1252(a)(5) and [(b)(9)] channel review of all claims, including policies-and-practices challenges . . . whenever they 'arise from' removal proceedings"); *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007).

Indeed, 8 U.S.C. § 1252(a)(2)(D) provides that "[n]othing . . . in any other provision of this chapter . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." *See also Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008) ("[J]urisdiction to review such claims is

vested exclusively in the courts of appeals").

The petition-for-review process before courts of appeals ensures that noncitizens have a proper forum for claims arising from their immigration proceedings and "receive their day in court." *J.E.F.M.*, 837 F.3d at 1031-32 (internal quotations omitted); *see also Rosario v. Holder*, 627 F.3d 58, 61 (2d Cir. 2010) ("the REAL ID Act of 2005 amended the [INA] to obviate . . . Suspension Clause concerns" by permitting judicial review of "nondiscretionary" BIA determinations and "all constitutional claims or questions of law"). These provisions divest district courts of jurisdiction to review both direct and indirect challenges to removal orders, including decisions to detain for purposes of removal or for proceedings. *See Jennings*, 583 U.S. at 294-95 (plurality in *dicta* presuming § 1252(b)(9) includes challenges to the "decision to detain [an alien] in the first place or to seek removal").

C.  **8 U.S.C. § 1252(a)(2)(B)(ii) shields from judicial review discretionary decisions, such as charge determinations regarding inadmissibility.**

Furthermore, § 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B).

Thus, even if there were any remaining ambiguity as to whether a foreign national could challenge the decision to detain him during removal proceedings, Congress added this additional jurisdictional bar to clarify that courts may not entertain a challenge to a discretionary decision under the INA.

**II.    Petitioner is lawfully in detention pursuant to 8 U.S.C. § 1225(b)(2).**

Should the Court determine that it has jurisdiction to consider the habeas petition, it should nevertheless find Petitioner's argument that his detention is pursuant to the wrong statutory authority fails on the merits.

There is a statutory distinction between aliens who are detained after lawful admission into the United States and those who are present without lawful admission. An individual who "arrives in the [U.S.]," or is "present" in this country but "has not been admitted," is considered an "applicant for admission" under 8 U.S.C. § 1225(a)(1). *Jennings*, 583 U.S. at 287; *Garibay-Robledo v. Noem*, No. 25-cv-177, slip op. at *1-2 (N.D. Tex. Oct. 24, 2025) (ECF No. 9). Applicants for admission are either covered by § 1225(b)(1) or § 1225(b)(2). *See Jennings*, 583 U.S. at 287 (§ 1225(b)(2) "serves as a catchall provision that applies to *all* applicants for admission not covered by § 1225(b)(1)" (emphasis added)).

Pursuant to 8 U.S.C. § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [(removal)] proceeding under section 1229a." The Supreme Court has held that § 1225(b)(2)(A) is a mandatory detention statute and that individuals detained pursuant to that provision are not entitled to bond. *Jennings*, 583 U.S. at 287 ("Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens.").

Petitioner falls squarely within the ambit of § 1225(b)(2)(A)'s mandatory detention requirement. He is an "applicant for admission" to the United States. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (explaining that "an alien who tries to enter the country illegally is treated as an 'applicant for admission,' § 1225(a)(1), and an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry'"); *Matter of Lemus-Losa*, 25 I&N Dec. 734, 743 (B.I.A. 2012) ("Congress has defined the concept of an 'applicant for admission' in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission . . . ."). Petitioner entered by crossing the United States border without being admitted. So, he is an "applicant for admission," and his detention is mandatory. 8 U.S.C. § 1225(b)(2)(A) (stating applicant for admission "shall be" detained).

The Supreme Court has confirmed an alien present in the country but never admitted is deemed "an applicant for admission" and that "detention must continue" "until removal proceedings have concluded" based on the "plain meaning" of 8 U.S.C. § 1225. *Jennings,* 583 U.S. at 289, 299. At issue in *Jennings* was the statutory interpretation of and interplay between § 1225(b) and § 1226. The Supreme Court reversed the Ninth Circuit Court of Appeals' imposition of a six-month time limit to § 1225(b) and § 1226(c). *Id.* at 297. In reaching that holding, the Court declared that "an alien who 'arrives in the United States,' *or* 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'"

*Id.* at 287 (emphasis added).

As the Court explained, both aliens detained at the border and those without legal status residing within the United States fall under § 1225. *Id.* at 287-88. This includes Petitioner, who is an alien present in the country but not yet admitted. *See Garibay-Robledo*, slip op. at *6-7 (explaining the statutory history of the Immigration and Nationality Act ("INA") which supports reading the term "applicants for admission" to include aliens detained within the United States who have not been admitted).

The BIA confirmed the application of § 1225 to applicants for admission present within the United States, in a published formal decision earlier this year. *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025). In *Hurtado*, the BIA affirmed that the Immigration Court lacked jurisdiction to conduct a bond hearing because the alien who was present in the United States for nearly three years but, never admitted, shall be detained under 8 U.S.C. § 1225 for the duration of his removal proceedings. *Id.* The case involved an individual who unlawfully entered the United States in 2022 and was granted temporary protected status in 2024. *Id.* at 216-17. That status was revoked in 2025, and the alien was subsequently placed in removal proceedings. *Id.* at 217. When the alien sought a redetermination of his custody status, the immigration judge held the Immigration Court did not have jurisdiction under § 1225. *Id.* at 216. The alien appealed to the BIA. *Id.*

In affirming the decision of the immigration judge, the BIA found § 1225 clear and unambiguous: "Based on the plain language of section 235(b)(2)(A) of the [INA], 8 U.S.C. § 1225(b)(2)(A) (2018), Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." *Id.* at 226. Indeed, § 1225 applies to aliens who are present in the country—even for years—who have not been admitted. *See id.* ("[T]he statutory text of the INA . . . is instead clear and explicit in requiring mandatory detention of all aliens who are applicants for admission, without regard to how many years the alien has been residing in the United States without lawful status." (citing 8 U.S.C. § 1225)). To hold otherwise, would lead to an "incongruous result" that rewards aliens who unlawfully enter the United States without inspection and possibly evade apprehension for a number of years. *Id.* at 228.

Next, the BIA rejected the alien's argument that the mandatory detention scheme under § 1225 rendered the recent amendment to § 1226 under the Laken Riley Act superfluous. *Id.* The BIA explained, "nothing in the statutory text of section 236(c), including the text of the amendments made by the Laken Riley Act, purports to alter or undermine the provisions of section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), requiring that aliens who fall within the definition of the statute 'shall be detained for [removal proceedings].'" *Id.* at 222. According to the BIA, any redundancy between the two statutes does not give license to "rewrite or eviscerate" one of the statutes. *See id.* (quoting *Barton v. Barr*, 590 U.S. 222, 239 (2020)). *See also Matter of Q. Li*, 29 I. & N. Dec. 66, 70 (BIA 2025) (holding that a

noncitizen who entered without inspection and was apprehended and paroled near the border was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)).

The BIA mandate is both concise and sweeping. "Under a plain language reading of section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), Immigration Judges lack authority to hear bond requests or to grant bond to aliens who—like the Petitioner here—are present in the United States without admission." *See id.* at 225. And the *Hurtado* decision was unanimous, conducted by a three-appellate judge panel. *See generally id.* It is binding on all immigration judges in the United States. 8 C.F.R. § 1003.1(g)(1) ("[D]ecisions of the [BIA] and decisions of the Attorney General are binding on all officers and employees of DHS or immigration judges in the administration of the immigration laws of the United States."). *Hurtado* is a "precedential opinion." *Id.* at 216; *see* 8 C.F.R. § 1003.1(g)(2)-(3).

Following *Hurtado*, several district courts around the country held that § 1225(b) permits the mandatory detention of aliens who had not been previously admitted when entering at the border but were subsequently found within the country. *See Vargas Lopez v. Trump*, No. 25-cv-526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, No. 25-cv-2325, 2025 WL 2730228, at *5 (S.D. Cal. Sept. 24, 2025); *see also C.B. v. Oddo*, No. 25-cv-263, 2025 WL 2977870, at *2 (W.D. Pa. Oct. 22, 2025) (holding petitioner could be held without bond pursuant to § 1225(b), but awarding habeas relief due to the petitioner's prolonged detention).

In *Vargas Lopez*, the district court expressly addressed the interplay of § 1225(b)(2) and § 1226(a). The court explained that these two statutory provisions

overlap and are not mutually exclusive. *Vargas Lopez*, 2025 WL 2780351, at *7 (citing *Jennings*, 583 U.S. at 289). While § 1225(b) provides for detention of alien applicants for admission, § 1226(a) is broader in scope and permits the Secretary to issue warrants for arrest and detention of aliens present in the country pending removal proceedings. Given that these sections are not mutually exclusive, an alien may be subject to both § 1225(b)(2) and § 1226(a) if he is an applicant for admission who is detained within the country. *Id.*; *see Barton v. Barr*, 590 U.S. 222, 239 (2020) (recognizing that "redundancies are common in statutory drafting").

An alien remains an applicant for admission, and subject to § 1225(b)(2), so long as he is "not clearly and beyond doubt entitled to be admitted" to the United States. *See* 8 U.S.C. § 1225(b)(2)(A). Nothing in either § 1225(b)(2) nor § 1226(a) provides that the government must default to detaining an alien pursuant to § 1226(a) if he is subject to detention under § 1225(b)(2) as well.

While the Third Circuit has not yet ruled on whether an alien like Petitioner may be detained under § 1225(b)(2), district courts in Pennsylvania, New Jersey, and elsewhere have overwhelmingly ruled contrary to the government's reading of the statute. *See supra* at 1-2 n.1. The Secretary of Homeland Security, however contends, that these decisions effectively read into the statute a limitation that is not expressly there—that § 1225(b)(2) only applies to applicants for admission who are *actively* seeking to enter the United States, typically near the border. *See, e.g.*, *Kashranov*, 2025 WL 3188399, at *6; *see also Bethancourt Soto v. Soto,* No. 25-cv-16200, 2025 WL 2976572 (D.N.J. Oct. 22, 2025).

The statute itself does not expressly contain any such limitation. *See* 8 U.S.C. § 1225(a) (defining applicant for admission as *either* "[a]n alien present in the United States who has not been admitted *or* who arrives in the United States" (emphasis added)). Further, Congress defined *all* aliens who are present in the United States without being admitted as "applicant[s] for admission," regardless of when they entered. *See* 8 U.S.C. § 1225(a)(1).

When an immigration officer encounters and examines an applicant for admission who seeks to remain in the United States, and that alien (like Petitioner) desires to remain in the United States, he is necessarily "seeking admission" within the meaning of 8 U.S.C. § 1225(b)(2)(A). Otherwise, the alien must "withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4). An alien continues to be "seeking admission" while in immigration removal proceedings to determine whether he can "be admitted to the United States." *See* 8 U.S.C. § 1229a(a)(3); *Lemus-Losa*, 25 I&N Dec. at 743 (recognizing that "many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be 'seeking admission' under the immigration laws"). In other words, an "applicant for admission" is necessarily "seeking admission." *See Rojas v. Olson*, No. 25-cv-1437, 2025 WL 3033967, at *8 (E.D. Wis. Oct. 30, 2025). *But see Bethancourt Soto*, 2025 WL 2976572, at *6.

Petitioner remains an applicant for admission, as he has not clearly and beyond doubt established that he is entitled to be admitted to the United States.

Consequently, he is subject to mandatory detention under § 1225(b)(2) and ineligible for a bond hearing before an immigration judge.

## III. Petitioner's detention does not violate Constitutional due process requirements.

Congress broadly crafted "applicants for admission" to include undocumented persons, like Petitioner, who are present within the United States. *See* 8 U.S.C. § 1225(a)(1). In so doing, Congress made a legislative judgment to detain undocumented persons during removal proceedings. 8 U.S.C. § 1225(b)(2)(A); *Jennings*, 583 U.S. at 297 ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded.").

The Supreme Court has repeatedly recognized this profound interest. Petitioner's mandatory detention pursuant to §1225(b) will only last the duration of his removal proceedings. *Demore*, 538 U.S. at 512 ("because the statutory provision at issue in this case governs detention of deportable criminal aliens *pending their removal proceedings,* the detention necessarily serves the purpose of preventing the aliens from fleeing prior to or during such proceedings"); *see also Jennings,* 583 U.S. at 304. In light of Congress's interest in regulating immigration, including by keeping specified persons in detention pending the removal period, the Supreme Court dispensed of any due process concerns without engaging in the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See generally Demore*, 538 U.S. at 531.

Petitioner's recent detention pending his removal proceedings does not violate the Due Process Clause. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 701

(2001) (detention less than six months presumed constitutional). Congress made the decision to detain him pending removal, which is a "constitutionally permissible part of that process." *Demore*, 538 U.S. at 531.

The Third Circuit has recognized that there may come a time when mandatory civil detention without a bond hearing becomes unreasonable. *See German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020) (analyzing detention under § 1226(c)). However, at this time, Petitioner does not challenge the reasonableness of his detention under *German Santos*.

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that the Court deny the petition for writ of habeas corpus.

Dated: January 22, 2026

Respectfully submitted,

DAVID METCALF
United States Attorney

/s/ Susan R. Becker for GBD
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

/s/ Isaac J. Jean-Pierre
ISAAC J. JEAN-PIERRE
Assistant United States Attorney
United States Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Phone: (215) 861-8372
Email: isaac.jean-pierre@usdoj.gov

*Counsel for Respondents*

**CERTIFICATE OF SERVICE**

I certify that on January 22, 2026, a true and correct copy of Respondents'
foregoing Opposition to Petition for Writ of Habeas Corpus was filed electronically
via the Court's CM/ECF system and served via CM/ECF on all counsel of record.

/s/ Isaac J. Jean-Pierre
ISAAC J. JEAN-PIERRE
Assistant United States Attorney